Trinette G. Kent (State Bar No. 025180)
Kent Law Offices
3219 E Camelback Rd #588
Phoenix, AZ 85018
Telephone: (480) 247-9644
Fax: (480) 717-4781
tkent@kentlawpc.com

Tod A. Lewis *(pro hac vice to be submitted)*
Jonathan B. Piper *(pro hac vice to be submitted)*
BOCK & HATCH, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: (312) 658-5500
Fax: (312) 658-5555
service@classlawyers.com

Attorneys for Plaintiff, Sidney Naiman,
individually and as the representative
of a class of similarly-situated persons

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sidney Naiman, individually and as the representative of a class of similarly-situated persons,<br><br>    Plaintiff,<br><br>v.<br><br>NewRez LLC,<br><br>    Defendant. | **CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

## INTRODUCTION

1. Plaintiff, Sidney Naiman ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. The TCPA was enacted in response to widespread public outrage concerning the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3. The TCPA is designed to protect consumer privacy by prohibiting, among other things, autodialed and prerecorded telemarketing calls to cellular telephones without the "prior express written consent" of the called party.

4. Defendant made at least one automated or prerecorded telemarketing call to Plaintiff using equipment prohibited by the TCPA, even though it did not have Plaintiff's prior express written consent to do so.

5. Plaintiff did not give prior express written consent to receive an autodialed or prerecorded phone call on his cellular phone from Defendant.

6. This case challenges Defendant's practice of initiating autodialed or artificial voice telemarketing calls to cellular telephones without the prior express written consent of the called parties as required by the TCPA. 47 C.F.R. § 64.1200(a)(2), (f)(8)(i).

7. Plaintiff seeks class-wide relief against Defendant for violating the Telephone Consumer Protection Act, 47 U.S.C. § 227. A class action is the best means

of obtaining redress for Defendant's illegal calls and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

8. Defendant's practice caused actual harm to Plaintiff and the other members of the Class in several ways, including temporarily using their cellular phones and tying up their lines, invading their privacy, causing wear and tear on their cellular phones, consuming battery life, and causing some of them to be charged for calls they did not want to receive. Moreover, these calls injured Plaintiff and the Class because they were frustrating, obnoxious, annoying, and a nuisance, and disturbed their solitude.

**PARTIES**

9. Plaintiff, Sidney Naiman, is an individual and a citizen of Scottsdale, Arizona.

10. Defendant, NewRez LLC, is a Delaware limited liability corporation and financial services company headquartered in Plymouth Meeting, Pennsylvania.

**JURISDICTION AND VENUE**

11. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute.

12. Personal jurisdiction exists in this Court because a substantial portion of the conduct took place in this District, Defendant has transacted business and made or performed contracts substantially connected with the State, and Defendant purposely directed activities at residents within the forum.

13. Venue is proper in this District because Defendant had sufficient contacts with this District, and a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District.

## BACKGROUND AND ENFORCEMENT OF THE TCPA

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

15. When Congress enacted the TCPA in 1991, it found that telemarketers were calling 18 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, 14021 ¶ 8 (2003) ("2003 Order"). By 2003, telemarketers were calling 104 million Americans every day, assisted by the proliferation of new and more powerful autodialing technology. *Id.*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

16. The problems Congress identified when it enacted the TCPA have only grown worse in recent years. The FCC has emphasized that action must be taken to "stop the scourge of illegal robocalls" because "U.S. consumers received approximately 2.4 billion robocalls per month in 2016." *See* https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

## THE TCPA PROHIBITS AUTOMATED AND PRERECORDED TELEMARKETING CALLS

17. The TCPA requires prior express written consent for all autodialed or artificial prerecorded telemarketing calls to cellular telephone numbers. 47 U.S.C. §227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2).

18. "The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

19. "The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services." 47 C.F.R. § 64.1200(f)(8)(i)(A).

20. According to the FCC, "[t]he term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the

purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(9).

21. Pursuant to its authority to make rules and regulations to implement the TCPA, 47 U.S.C. § 227(b)(2), the FCC has ruled in a 1995 Memorandum Opinion and Order that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations. Calls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *In re Rules & Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. On May 9, 2013, the FCC released a Declaratory Ruling confirming that a person or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of … section 227(b) … that are committed by third-party telemarketers." *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574, ¶ 1 (2013) ("*DISH Network*").

23. A "seller" may be liable for telemarketing activities that it outsources, even if it does not physically place the calls:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to

> sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*DISH Network*, 28 FCC Rcd at 6588, ¶ 37.

24. Finally, the FCC has stated that called parties may obtain "evidence of these kinds of relationships ... through discovery, if they are not independently privy to such information." *Id.* at 6592-93, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.*

25. Under principles of agency and apparent authority, Defendant is vicariously liable for the autodialed and artificial or prerecorded[1] voice telemarketing calls placed to the cellular phones of Plaintiff and the Class marketing mortgage loans.

26. Defendant ratified and accepted the benefits of the autodialed and prerecorded telemarketing calls and it appeared to Plaintiff and the Class that was made with Defendant's authority when placing the automated and prerecorded robocalls. *See* https://www.fcc.gov/consumers/guides/stop-unwanted-robocalls-and-texts ("Robocalls are calls made with an autodialer or that contain a message with a prerecorded or artificial voice.").

---

[1] "Prerecorded" shall refer to "artificial or prerecorded voice" calls or messages.

**FACTS**

27. Advertising to cellular phones uses the called party's equipment.

28. Defendant, directly or through a telemarketer it had retained, transmitted autodialed and prerecorded calls to cellular phones—those of Plaintiff and the other members of the putative Class—to promote Defendant's products and services without the called parties' prior express written consent.

29. Defendant solicits business through robocalls to cellular phones. These robocalls are made directly by Defendant, or by a telemarketer acting on Defendant's behalf.

30. Once the autodialer connects Defendant or its telemarketer with a consumer through a robocall, Defendant or its telemarketer ultimately transfers the call to one of Defendant's mortgage consultants to solicit business.

31. The autodialer is programmed to connect only answered calls with a live person who then transfers the call to a representative of Defendant who specializes in selling mortgage products.

32. Defendant or its telemarketer called Plaintiff's cellular phone using an autodialer, which connected to a live human telemarketer who then ultimately transferred the call to Defendant's mortgage consultant.

33. On March 20, 2019, Plaintiff received an autodialed telemarketing call made on behalf of Defendant.

34. Plaintiff's spouse answered Plaintiff's cellular phone and said "Hello?" several times. There was dead air on the other end of the call, but after she said "Hello?" several times, she heard a distinctive "click" and then one of Defendant's employees or contractors came on the line, took information from Plaintiff, and then connected Plaintiff's spouse to one of Defendant's mortgage consultants.

35. Once the call was transferred, Plaintiff's spouse and Defendant's mortgage consultant discussed options for financing a kitchen update.

36. Rather than continue the discussion by telephone, Plaintiff's spouse requested that Defendant's mortgage consultant email Plaintiff with contact information.

37. Later that afternoon, Defendant's mortgage consultant sent Plaintiff an email with her contact information.

38. The distinctive pause and a "click" after Plaintiff's spouse answered is evidence of the caller's use of a predictive dialer, which uses an algorithm to "predict" when telemarketing agents will be available to field the call. *See* 2003 Order, 18 FCC Rcd. at 14022, n. 31.[2]

39. The above facts demonstrate that the calls were made as part of a telemarketing campaign, and that the calls were made using an automatic telephone dialing system ("ATDS") and a prerecorded voice.

---

[2] "[I]n 2003, the FCC expressed growing concern about the proliferation of predictive dialing systems that use "a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that predicts the time when a consumer will answer the phone and the telemarketer will be available to take the call."

9

40. The TCPA defines "automatic telephone dialing system," or "ATDS," as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

41. "The statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).

42. Defendant (or its telemarketer) used a device that had either: (A) the capacity to call numbers produced using a random or sequential number generator, or (B) the capacity to dial stored numbers automatically. *Id.*

43. Defendant (or its telemarketer) initiated unauthorized telephone solicitations to the cellular phones of Plaintiff and other members of the Class using an ATDS or prerecorded voice to advertise the availability of a mortgage without their prior express written consent.

44. Defendant (or its telemarketer) used an ATDS and prerecorded voice to call the cellular phones of Plaintiff and other Class members to ultimately connect them

to one of Defendant's mortgage consultants in order to encourage them to apply for a refinance or other loan, and did so without their prior express written consent.

45. The autodialed and prerecorded voice calls to cellular phones were designed to encourage and offer Defendant's goods or services for sale, including "competitive" mortgage quotes.

46. Neither Plaintiff nor his spouse gave Defendant Plaintiff's cellular telephone number or requested that either company call his cellular phone about an mortgage quote.

47. Neither Plaintiff nor his spouse nor anyone else acting on Plaintiff's behalf expressly consented in writing to receive Defendant's autodialed or prerecorded telemarketing calls to his cellular phone.

## CLASS ALLEGATIONS

48. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), Plaintiff brings this action against Defendant on behalf of himself and all other persons similarly situated throughout the United States.

49. Plaintiff proposes the following class definition:

> All persons in the United States to whom one or more telemarketing or advertising calls were initiated (1) to their cellular telephone number, (2) by or on behalf of NewRez LLC, (3) using an automatic telephone dialing system or an artificial or prerecorded voice, (4) on or after August 30, 2015, and (5) without their prior express written consent.

50. Excluded from the class are Defendant, any entity in which Defendant has a controlling interest, each of their respective officers or legal representatives, and any Judge assigned to this action, including his or her immediate family.

51. The proposed class members are identifiable through phone records and phone number databases.

52. Plaintiff is a member of the proposed class.

53. The automated technology that Defendant (or its telemarketer) used to call Plaintiff's cellphone is capable of contacting thousands of people a day, and so the potential class members number in the hundreds or thousands, at least. Individual joinder of so many persons is impracticable.

54. Use of a prerecorded voice and voice prompt menu further increases the scale at which Defendant (or its telemarketer) can make the calls without human intervention.

55. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

    a. Whether Defendant (or its telemarketer) used an automatic telephone dialing system or an artificial or prerecorded voice to call the cellular phones of Plaintiff and others;

    b. Whether Defendant (or its telemarketer) initiated telemarketing calls to cellular phones without the prior express written consent of the called parties;

    c.    Whether Defendant is liable for its telemarketers' violations of the TCPA;

    d.    Whether Plaintiff and the other members of the class are entitled to statutory damages under the TCPA;

    e.    Whether Defendant's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the class; and

    f.    Whether Plaintiff and members of the class are entitled to equitable relief, including but not limited to injunctive relief.

56. Plaintiff's claims are based on the same facts and legal theories as the claims of all class members and therefore are typical of the claims of class members. Plaintiff and the other class members all received telephone calls to their cellular telephone lines through the same or similar dialing system and or the same or similar prerecorded voice.

57. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the Class he seeks to represent. Plaintiff is a victim of ATDS telemarketing to his cellular phone using a prerecorded voice without any emergency purpose and without his prior express written consent, and he is committed to the vigorous prosecution of this action. Plaintiff has retained counsel competent and experienced in complex TCPA class action litigation. Plaintiff will vigorously

1  prosecute this action.  Plaintiff and his counsel will fairly and adequately protect the

2  interest of members of the class.

3        58.  Common questions of fact and law predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.  The only individual questions concern identification of class members, which will be ascertainable from records maintained by Defendant or their agents.

      59.  The likelihood that individual class members will prosecute separate actions is remote because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable given the expense involved and the small recoveries available through individual actions.

### **COUNT I - VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ*.**

      60.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein, and brings Count I individually and on behalf of the class.

      61.  The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, 47 U.S.C. §227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice.

      62.  As a result of Defendant's violations of the TCPA, 47 U.S.C. §227, Plaintiff and members of the class are entitled to an award of $500 in damages for each

and every call made to their cellular telephone numbers using an ATDS or artificial or prerecorded voice in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

63. Plaintiff and members of the class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the TCPA, 47 U.S.C. §227, by making calls, except for emergency purposes, to cellular telephone numbers using an ATDS or artificial or prerecorded voice.

64. Defendant's violations were knowing or willful.

65. If the Court determines that Defendant's actions were knowing or willful, then Plaintiff requests that the Court increase the statutory damages up to three times the amount. 47 U.S.C. § 227(b)(3).

WHEREFORE, Plaintiff, for himself and all class members, requests the following relief:

A. Certification of the proposed class;

B. Appointment of Plaintiff as representative of the class;

C. Appointment of Plaintiff's counsel as counsel for the class;

D. An order awarding statutory damages of at least $500 per phone call at issue pursuant to 47 U.S.C. § 227(b)(3)(B);

E. An order increasing those statutory damages up to three times ($1,500 per call at issue) pursuant to 47 U.S.C. § 227(b)(3)(C);

F. An order enjoining Defendant from engaging in the same or similar unlawful practices alleged herein;

G.  An order awarding costs of suit;

H.  Leave to amend this Complaint to conform to the evidence presented at trial; and

I.  Orders granting any other relief this Honorable Court deems equitable, proper, and just.

Dated: September 4, 2019       Respectfully Submitted,

SIDNEY NAIMAN, individually and as the representative of a class of similarly-situated persons,

By:  */s/ Trinette G. Kent*

Trinette G. Kent
Kent Law Offices
3219 E Camelback Rd #588
Phoenix, AZ 85018
Telephone:  (480) 247-9644
Fax:  (480) 717-4781
tkent@kentlawpc.com

Tod A. Lewis *(pro hac vice to be submitted)*
Jonathan B. Piper *(pro hac vice to be submitted)*
Bock Hatch Lewis & Oppenheim, LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Tel:  (312) 658-5500
Fax:  (312) 658-5555
service@classlawyers.com