Marvin C. Ruth (024220)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 224-0999
F: (602) 224-6020
mruth@cblawyers.com

Ben Mohandesi (*Admitted Pro Hac Vice*)
Jordan S. Yu (*Admitted Pro Hac Vice*)
**YU MOHANDESI LLP**
633 West Fifth Street
Suite 2800
Los Angeles, CA 90071
(213) 377-5502
bmohandesi@yumollp.com
jyu@yumollp.com

*Attorneys for NewRez LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Sidney Naiman, individually and as the representative of a class of similarly-situated persons,<br><br>        Plaintiff,<br><br>v.<br><br>NewRez LLC,<br><br>        Defendant. | No. 2:19-cv-05085-SRB<br><br>**JOINT MOTION FOR STAY PENDING THE UNITED STATES SUPREME COURT'S DECISION IN** ***FACEBOOK, INC. V. DUGUID, ET AL.*** |

**I.   INTRODUCTION**

Plaintiff Sidney Naiman ("Plaintiff" or "Naiman") alleges that Defendant NewRez LLC ("Defendant" or "NewRez"), "directly or through a telemarketer," made one phone call to his cellular phone to market mortgage services. Based on this allegation, Plaintiff brings this action asserting one cause of action for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, seeking to represent a nationwide class of similarly situated individuals. Although the merits of Plaintiff's claim will be addressed at the appropriate juncture, for now, the parties agree that a brief stay of this action is warranted and jointly

{00508959.1 }

move for a stay.

Specifically, on July 9, 2020, the United States Supreme Court granted *certiorari* in *Facebook, Inc. v. Duguid, et al.*, No. 19-511 ("*Facebook*") to resolve a conflict among the Courts of Appeal over the definition of an automatic telephone dialing system ("ATDS"), an essential element for all TCPA claims and a threshold issue in this action. The question presented is: "Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'"[1]

Currently, the Third, Seventh and Eleventh Circuit Courts of Appeal require random or sequential number generation in order for dialing equipment to qualify as an ATDS. In contrast, the Second, Sixth and Ninth Circuit Courts of Appeal only require that dialing equipment first store and then automatically dial those stored telephone numbers, and do not require random or sequential number generation.

In its upcoming October 2020 term, the Supreme Court will finally resolve this critical divide regarding the definition of an ATDS. Because the call at issue in this action will fall in one of the two primary camps (1) stored and dialed numbers; or (2) random or sequential number generation, the Supreme Court's decision in *Facebook* could potentially dispose of this action, thereby eliminating the need for any additional discovery or motion practice. At the very least, however, the Supreme Court's ruling will clarify which definition of an ATDS will apply to this action, providing the legal framework under which likely extensive fact, class and expert discovery as well as motion practice will be governed. Indeed, even if the decision in *Facebook* does not entirely resolve this action, it may obviate the need for expert witnesses.

---

[1] https://www.supremecourt.gov/DocketPDF/19/19-511/119361/20191017155036139_2019-10-17%20Facebook%20v.%20Duguid%20Petition%20FINAL.pdf (last visited August 5, 2020).

Accordingly, in this putative nationwide class action, the parties jointly request a brief stay pending resolution of *Facebook* to allow the parties and the Court to obtain much needed clarity as to the threshold issue of what constitutes an ATDS.

## II.     PLAINTIFF'S ALLEGATIONS

In this action, Naiman alleges that "Defendant or its telemarketer called Plaintiff's cellular phone *using an autodialer, which connected to a live human telemarketer* who then ultimately transferred the call to Defendant's mortgage consultant." (Complaint, ¶ 32 (emphasis added).) According to the Complaint, the call placed on March 20, 2019 was an "autodialed telemarketing call made on behalf of Defendant" because after saying "'hello?' several times," Plaintiff's spouse "heard a distinctive 'click'" before she was connected with a live representative. (*Id.* at ¶¶ 33-34.)

Based on these allegations, Plaintiff brings a claim for violation of the TCPA, and seeks to certify a class of "All persons in the United States to whom one or more telemarketing or advertising calls were initiated (1) to their cellular telephone number, (2) by or on behalf of NewRez LLC, (3) using an automatic telephone dialing system or an artificial or prerecorded voice, (4) on or after August 30, 2015, and (5) without their prior express written consent." (*Id.* at ¶ 49.)

## III.    THE CIRCUIT COURT SPLIT

The TCPA makes it unlawful for a person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to a cellular telephone. 47 U.S.C. § 227(b)(1)(A)(iii). An ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, ***using a random or sequential number generator***; ***and (B) to dial such numbers***." 47 U.S.C. § 227(a)(1); 47 C.F.R. § 64.1200(f)(2) (emphasis added). In enacting the TCPA, Congress specifically targeted those "telemarketers [who] typically used autodialing equipment that either called

numbers in large sequential blocks or dialed random 10-digit strings." *Dominguez v. Yahoo, Inc.,* 629 F. App'x 369, 372 (3d Cir. 2015). Such dialing allowed callers to reach and tie up unlisted and specialized numbers [ S. Rep. No. 102-178, at 2 (1991)] and also allowed callers to reach *all* such numbers in an area, creating a "potentially dangerous" situation in which no outbound calls (including emergency calls) could be placed. H.R. Rep. No. 102-317, at 10 (1991).

The Federal Communications Commission ("FCC") initially interpreted the TCPA as specifically targeting equipment that placed a high volume of calls by randomly or sequentially generating the numbers to be dialed, declaring that equipment with "speed dialing," "call forwarding," and "delayed message" functions are not an ATDS, "because the numbers called are not generated in a random or sequential fashion." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 7 FCC Rcd. 8752, 8776 (1992).[2] However, in 2003, the FCC expanded its interpretation as to what constitutes an ATDS, stating that "predictive dialers" are an ATDS. *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. 14014, 14093 (2003). In 2015, the FCC again expanded the definition of an ATDS, concluding that the "capacity" of a device includes its "potential functionalities" – *i.e.*, functionalities that did not exist at the time a call was dialed, but that the device could theoretically have if reprogrammed or enhanced with software. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7974 (2015).

The FCC's 2015 Order was challenged before the D.C. Circuit in *ACA Int'l v. Fed. Commc's Comm'n*, 885 F.3d 687 (D.C. Cir. 2018). The D.C. Circuit vacated the Commission's interpretation of "capacity," noting that if "capacity" includes "features that

---

[2] The TCPA vests the FCC with responsibility to promulgate regulations implementing the statute's requirements. 47 U.S.C. § 227(b)(2).

can be added through software changes or updates," any smartphone would be an ATDS, because "any smartphone, with the addition of software, can gain the statutorily enumerated features." *Id.* at 696, 700. The D.C. Circuit also "set aside" the FCC's interpretation of the functions of an ATDS:

> So which is it: does a device qualify as an ATDS only if it can generate random or sequential numbers to be dialed, or can it so qualify even if it lacks that capacity? The 2015 ruling, while speaking to the question in several ways, gives no clear answer (and in fact seems to give both answers). It might be permissible for the Commission to adopt either interpretation. But the Commission cannot, consistent with reasoned decision making, espouse both competing interpretations in the same order.

*Id.* at 702–03.

In the wake of the D.C. Circuit's *ACA Int'l*, a clear Circuit split emerged regarding the definition of an ATDS over the past two years.

In 2018, the Third Circuit independently interpreted the definition of an ATDS, and held that a system that "sent messages only to numbers that had been individually and manually inputted into its system by a user" did *not* qualify as an ATDS. *Dominguez v. Yahoo*, 894 F.3d 116, 121 (3d Cir. 2018). Specifically, *Dominguez* held that to qualify as an ATDS, the system must have "the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers." *Id*.

But later that same year, the Ninth Circuit adopted a different definition of an ATDS. In *Marks v. Crunch San Diego*, 904 F.3d 1041 (9th Cir. 2018), the Ninth Circuit concluded "that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the capacity to dial stored numbers automatically." *Id*. at 1052.

Earlier this year, however, the Eleventh Circuit declined to follow *Marks*, and instead, reached the same conclusion as the Third Circuit in interpreting the definition of an ATDS. *Glasser v. Hilton Grand Vacations Company, LLC*, 948 F.3d 1301 (11th Cir. 2020).

Subsequently, on March 19, 2020, in *Gadelhak v. AT&T Services*, 950 F.3d 458 (7th Cir. 2020), the Seventh Circuit held that text messages sent from a list of telephone numbers stored in a customer database did not violate the TCPA, because a dialing system that "neither stores nor produces numbers using a random or sequential number generator," but rather "exclusively dials numbers stored in a customer database," "is not an 'automatic telephone dialing system' as defined by the [TCPA]." *Id.* at 460.

On April 7, 2020, in *Duran v. La Boom Disco, Inc.*, 955 F.3d 279 (2d Cir. 2020), the Second Circuit recognized that there was an ongoing debate concerning this issue, but ultimately followed the Ninth Circuit, adopting the *Marks* definition of an ATDS and acknowledging that it was joining the minority position. *Duran*, 955 F.3d at 281 n.5, 284-86.

Finally, just last week on July 29, 2020, in *Allan v. Pennsylvania Higher Education Assistance Agency,* No. 19-2043, p.9 (6th Cir. 2020)*,* the Sixth Circuit, after stating that "the definition of ATDS itself is ambiguous," followed the Ninth and Second Circuits' definition of an ATDS which does not require random or sequential number generation, further deepening the Circuit split on this critical issue.

### IV.   THE *FACEBOOK* CASE

In *Duguid v. Facebook, Inc.*, now pending resolution by the Supreme Court, the plaintiff (Duguid) alleged that, despite the fact that he is not a Facebook customer and never consented to Facebook contacting his cell phone, Facebook sent him sporadic text messages, alerting him "that an unrecognized browser was attempting to access his (nonexistent) Facebook account." *Duguid v. Facebook, Inc.*, 926 F.3d 1146, 1150 (9th Cir. 2019).  Duguid brought TCPA claims against Facebook in the Northern District of California, alleging that Facebook sent the text messages using an ATDS.  *Id.*

Facebook filed a motion to dismiss for failure to state a claim, which was granted by the district court, which stated: "Plaintiff's allegations do not support the inference that the text messages he received were sent using an ATDS.  Plaintiff alleges that the login

notifications are designed 'to alert users when their account is accessed from a new device.' … These allegations suggest that Facebook's login notification text messages are targeted to specific phone numbers and are triggered by attempts to log in to Facebook accounts associated with those phone numbers." *Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2016 WL 1169365, at *5 (N.D. Cal. Mar. 24, 2016).  This, the court explained, was incompatible with a conclusion that "Facebook sends text messages en masse to randomly or sequentially generated numbers." *Id.*

After Duguid filed a first amended complaint, Facebook again moved to dismiss, and the district court granted the motion on the same grounds, without leave to amend, concluding that Facebook's system was not an ATDS because "no plausible inference can be made that Facebook's equipment has the capacity to generate random or sequential numbers." *Duguid v. Facebook, Inc.*, No. 15-CV-00985-JST, 2017 WL 635117, at *5 (N.D. Cal. Feb. 16, 2017).

Duguid filed an appeal.  In the interim between the district court's order and the Ninth Circuit's opinion in *Duguid*, the Ninth Circuit issued its opinion in *Marks*.  Bound by *Marks*, the Ninth Circuit reversed the district court's dismissal of Duguid's complaint, holding that, pursuant to the Ninth Circuit's "clarification" in *Marks* "an ATDS need not be able to use a random or sequential generator to store numbers—it suffices to merely have the capacity to 'store numbers to be called' and 'to dial such numbers automatically.'" *Duguid*, 926 F.3d at 1151.

On October 17, 2019, Facebook filed a petition for writ.  Relevant here, the second "question presented" in the petition for writ is as follows:  "Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or sequential number generator.'" *Facebook, Petition for Cert.,* p. ii (Questions Presented, No. 2), filed Oct. 17, 2019.

On July 9, 2020, the Supreme Court granted certiorari to review the Ninth Circuit's decision in *Facebook* with regard to that question, and is set to resolve the circuit split on the ATDS issue during the October 2020 term, with the opening brief due less than one month from now, on September 4, 2020.  *Facebook, Inc. v. Duguid, et al.*, --- S.Ct. ----, 2020 WL 3865252 (U.S. July 9, 2020).

Thus, the question at the heart of a nationwide Circuit split is now pending before the Supreme Court: what exactly is an ATDS?  The Seventh Circuit opined in *Gadelhak*, "[t]here are at least four ways of reading the statutory definition of an 'automatic telephone dialing system.'"  *Gadelhak,* 950 F.3d at 463-64.  And as the Second Circuit acknowledged in *Duran*, this "definitional question" is of nationwide importance, as it "pervades TCPA litigation" across the country.  *Duran*, 955 F.3d at 281.

The Supreme Court's decision will necessarily impact this litigation.  At the very least, a binding decision regarding the definition of an ATDS will frame the governing legal standard, simplifying the legal and factual issues and streamlining discovery as the parties seek to make an evidentiary showing that the system at issue is or is not an ATDS.

V.     **ARGUMENT**

   **A.     Legal Standard**

"A district court has discretionary power to stay proceedings in its own court...." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  "The power to stay a case is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Halliwell v. A-T Sols.*, No. 13-CV-2014-H (KSC), 2014 WL 4472724, at *7 (S.D. Cal. Sept. 10, 2014) (quoting *Landis*, 299 U.S. at 254).

Moreover, a district court may stay a case "pending resolution of independent proceedings which bear upon the case," even if those proceedings are not "necessarily

controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (citations omitted).  In such circumstances, a stay is most "efficient for [the court's] own docket and the fairest course for the parties[.]" *Id.* at 863; *see also Landis*, 299 U.S. at 253 (holding that a stay may be warranted where the resolution of other litigation may "assist in the determination of the questions of law involved.").

District courts in the Ninth Circuit routinely stay cases when a pending Supreme Court ruling is central to an issue in the case.  *See, e.g., In re Sequenom, Inc. Stockholder Litig.*, No. 16-cv-02054-JAH-BLM, 2019 WL 1200091, at *2 (S.D. Cal. Mar. 12, 2019) (granting motion to stay in a putative securities class action pending a Supreme Court decision); *Nguyen v. Marketsource, Inc.*, No. 17-CV-02063-AJB-JLB, 2018 WL 2182633, at *6 (S.D. Cal. May 11, 2018) (granting motion to stay in a putative collective/class employment action pending a Supreme Court decision); *Rodriguez v. Jerome's Furniture Warehouse*, No. 3:17-cv-00460-L-NLS, 2017 WL 3131845, at *4 (S.D. Cal. July 24, 2017) (same); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 454130, at *3 (N.D. Cal. Feb. 5, 2016) (granting motion to stay in a putative Electronic Communications Privacy Act class action pending a Supreme Court decision); *Eric B. Fromer Chiropractic, Inc. v. N.Y. Life Ins. & Annuity Corp.*, No. CV 15-04767-AB, 2015 WL 6579779, at *1-2 (C.D. Cal. Oct. 19, 2015) (granting motion to stay in a putative TCPA class action pending Supreme Court decisions).

In determining whether to grant a stay, courts in the Ninth Circuit weigh the "competing interests which will be affected by the granting or refusal to grant a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). The interests which must be balanced include: (1) "the possible damage which may result from the granting of a stay[;]" (2) "the hardship or inequity which a party may suffer in being required to go forward[;]" and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254–55).

Here, all relevant factors favor a brief stay of this action.

### B. This Action Should Be Stayed Pending The Supreme Court's Ruling In *Facebook*

#### 1. The "Possible Damage" Resulting from a Stay Is Minimal and Weighs in Favor of a Stay

The potential prejudice or harm to the parties weighs in favor of a stay. First and foremost, this is a joint motion by the parties. After extensive discussions, the parties agreed that a stay pending resolution of *Facebook* is necessary to allow the parties to litigate this action under the correct legal standard.[3] Accordingly, the parties do not believe that there is damage or prejudice resulting from a stay. Even assuming there is any such damage or prejudice, the parties have stipulated that the clarity that will be provided by the Supreme Court on this critical issue will far outweigh any such damage or prejudice.

Further, the requested stay is brief and finite. On July 9, 2020, the Supreme Court granted certiorari in *Facebook* and subsequently granted the parties' request for the following briefing schedule: petitioner's brief due September 4, 2020 and respondent's brief due October 16, 2020.[4] Accordingly, briefing before the Supreme Court is currently scheduled to be completed in the next few months, with this critical issue set for resolution during the Supreme Court's October 2020 term.

Hence, a short stay pending resolution of *Facebook* will not result in any "damages" or prejudice to any party. *Eric B. Fromer Chiropractic, Inc.*, 2015 WL 6579779, at *2 (stay not prejudicial in TCPA case pending two Supreme Court decisions, where stay was expected to last up to one year); *Duchene v. Westlake Servs., LLC*, No. 2:13-CV-01577, 2015 WL 5947669, at *2 (W.D. Pa. Oct. 13, 2015) (stay of "eight to nine months" in TCPA action

---

[3] The parties discussed the merits of this stay request on at least five separate occasions.
[4] *Facebook, order granting motion to extend time to file briefs*, July 24, 2020. Pursuant to this briefing schedule, an optional reply brief is due on November 16, 2020. Sup. Ct. Rule 25, subs. 1-3

pending two Supreme Court decisions not prejudicial); *A.M. by & through Deora v. Bridgecrest Acceptance Corp.*, No. 4:20-CV-00553-SEP, 2020 WL 3489280, at *3 (E.D. Mo. June 26, 2020) (granting motion to stay in a putative TCPA class action pending Supreme Court decision).

### 2. The "Hardship or Inequity" Resulting from Going Forward Would Be Substantial and Weighs in Favor of a Stay

There is no question that "hardship or inequity" will result if a stay is not granted. This is a putative nationwide TCPA class action, and Plaintiff seeks an order awarding $1,500 per phone call at issue dating back to August 2015.

To prove any TCPA claim, a plaintiff must establish as a threshold matter that the defendant used an ATDS to call a cellular telephone. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Under the current legal landscape, however, there is no consensus on what an ATDS is, but a definitive answer by the United States Supreme Court is on the horizon. Indeed, three of the six Circuits to examine the ATDS issue have adopted a definition that requires random or sequential number generation (with the D.C. Circuit also espousing a narrow definition of an ATDS), while three other Circuits have adopted a definition of an ATDS that does not require random or sequential number generation. If the Supreme Court also adopts a definition of an ATDS that requires random or sequential number generation, Defendant argues that it could have a dispositive defense to this action, rendering much of the costly discovery and motion practice left in this action moot.

But even if the Supreme Court decision in *Facebook* does not dispose of this action as Defendant argues, it will nevertheless have a profound impact on this case for both parties. Continued litigation now would impose a premature, cumbersome discovery process focused on each potential definition of an ATDS, only one of which will prove necessary once an ATDS is defined by the Supreme Court. Moreover, because Plaintiff's class definition is conditioned upon calls being made with an ATDS, the parties cannot prepare a meaningful

class certification motion or opposition, much less file or oppose motions for summary judgment, before the Supreme Court settles the definitional divide. (Complaint, ¶ 49.) Indeed, the definition of an ATDS is a critically important preliminary question that pervades all aspects of this action, both procedurally and substantively, as well as all facets of discovery, including fact, class and expert discovery. Accordingly, inherent notions of fairness and justice dictate granting a short stay to provide both parties a meaningful opportunity to prepare their case based on the correct legal standard.

### 3. The "Orderly Course of Justice" Weighs in Favor of a Stay

In determining whether the third *Landis* factor weighs in favor of a stay, "considerations of judicial economy are highly relevant." *Gustavson v. Mars, Inc.,* No. 13-CV-04537-LHK, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014) (citing *Fuller v. Amerigas Propane, Inc.*, No. 09-2616 TEH, 2009 WL 2390358, at *1 (N.D. Cal. Aug. 3, 2009). *See also Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (citing *American Seafood v. Magnolia Processing, Inc.*, 1992 WL 102762, at *1-2 (E.D. Penn. 1992) (characterizing the third factor as "the judicial resources that would be saved").

Here, judicial economy will be served by staying this case. As noted above, Defendant argues that because the Supreme Court may conclude that the calling system at issue in this litigation does not qualify as an ATDS, *Facebook* could dispose of this action, rendering any litigation activity prior to that ruling a waste of both judicial and litigant resources. But even if *Facebook* is not dispositive to this case, it will at the very least significantly impact this case by providing the governing legal standard for discovery as well as the procedural and dispositive motions remaining in this action. As set forth above, the parties cannot focus their discovery efforts, including fact, class and expert discovery, until the correct legal standard for an ATDS is announced by the Supreme Court, and the parties also cannot meaningfully prepare their procedural and substantive motions until they knows what an ATDS is. Accordingly, under the circumstances, a stay is most "efficient for [this

Court's] own docket and the fairest course for the parties." *Leyva*, 593 F.2d at 863; *see also Landis*, 299 U.S. at 253 (stay warranted where the resolution of other litigation may "assist in the determination of the questions of law involved."). *Accord Wright*, 2020 WL 1149906, at *1 (granting stay in TCPA action: "The Court believes that any proceedings before the Supreme Court issues guidance in the upcoming *Barr v. Am. Ass'n* will be—among other things—a waste of judicial resources…").

Further, the parties have been diligent in litigating this case and conducting discovery thus far. Specifically, the parties already exchanged written discovery and documents, and also served eight subpoenas on third parties. (*See* Plaintiff's Notice of Service of Subpoenas and Written Discovery [ECF Doc. No. 25].) In addition, Defendant already noticed Plaintiff's deposition, and the parties were discussing, *inter alia*, document discovery matters and deposition scheduling when the Supreme Court granted the *Facebook* petition on July 9, 2020. Accordingly, the requested stay is not being sought to delay the proceedings or burden the Court, but rather, for the sole purpose of obtaining much needed clarity on the definition of an ATDS, a preliminary issue that pervades all aspects of this action.

## VI.   CONCLUSION

For the foregoing reasons, the parties jointly and respectfully requests that the Court stay this action pending the Supreme Court's decision in *Facebook, Inc. v. Duguid, et al.*, No. 19-511.

RESPECTFULLY SUBMITTED this 7th day of August, 2020.

**COPPERSMITH BROCKELMAN PLC**

By: /s/ Marvin C. Ruth
Marvin C. Ruth
*Attorneys for Defendant NewRez LLC*

**YU MOHANDESI LLP**
Ben Mohandesi (*Admitted Pro Hac Vice*)
Jordan S. Yu (*Admitted Pro Hac Vice*)

**KENT LAW OFFICES**

By: /s/ *Trinette G. Kent (w/permission)*
    Trinette G. Kent
    3219 E. Camelback Rd., #588
    Phoenix, AZ  85018

**BOCK & HATCH, LLC**

By: /s/ *Tod A. Lewis (w/permission)*
    Tod A. Lewis
    Jonathan B. Piper
    134 N. La Salle St., Suite 1000
    Chicago, IL  60602

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/ Verna Colwell*